(No. 51032.–)

THE COUNTY OF COOK, Appellee, v. FELIPE AYALA
*et al.*, Appellants.

*Opinion filed May 24, 1979.*

William P. Tuggle (Joan M. Pucillo, of counsel), and Winston & Strawn, of Chicago (Calvin Sawyier, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Stuart D.

Gordon, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case arises out of a dispute between the board of commissioners of Cook County (County Board) and the Health and Hospitals Governing Commission of Cook County (Hospital Commission), regarding the power of the County Board to impose a legally binding limit upon the total annual expenditures of the Hospital Commission. As a result of that dispute, the County of Cook brought this action in the circuit court of Cook County, seeking declaratory and injunctive relief against the Hospital Commission and its members. (For convenience, we will refer to all defendants as the Hospital Commission.) The circuit court granted such relief and dismissed defendants' counterclaim for declaratory judgment on a separate issue. We granted the defendants' motion to transfer their appeal directly here pursuant to our Rule 302(b) (58 Ill. 2d R. 302(b)), and we now affirm.

The Hospital Commission, a creature of statute, is a relatively recent innovation in Illinois local government law. It traces its ancestry to 1969, when the legislature enacted the County Hospitals Governing Commission Act (Ill. Rev. Stat. 1969, ch. 34, par. 5011 *et seq.* (the Act)). As originally adopted, section 13 of the Act provided as follows:

> "On or before the 1st day of December of each year the Commission shall submit to the Board of Commissioners of such county a budget for the expenses of any such hospital, hospital facility and the hospital, medical, nursing, health and allied medical programs related thereto for which it requests the county to make an appropriation. The Board of Commissioners shall appropriate a sufficient sum of money as the Board deems necessary to meet the expenses and to carry out the

provisions of this Act." (Ill. Rev. Stat. 1969, ch. 34, par. 5023.)

Section 14 of the Act further provided that "[t]he [Hospital] Commission shall provide the Board of Commissioners of such county with such information in medical, personnel and budgetary matters as the Board may request." (Ill. Rev. Stat. 1969, ch. 34, par. 5024.) Thus, under the Act, as originally adopted, the Hospital Commission would submit a budget to the County Board, including both projected revenues as well as proposed expenditures, and the County Board would "appropriate a sufficient sum of money as the Board deems necessary to meet the expenses and to carry out the provisions of this Act." Ill. Rev. Stat. 1969, ch. 34, par. 5023.

It is undisputed that, under this scheme, the Hospital Commission could not lawfully expend in excess of the total amount approved for expenditure by the County Board, regardless of the source of the funds to be expended. The Act was amended, however, by Public Acts 76–2015 and 78–925, and the Hospital Commission contends that the effect of those amendments was to take away the County Board's power to establish a legally binding limit upon the total annual expenditures of the Hospital Commission. We disagree.

Several provisions of the Act were affected by the 1970 and 1973 amendments, but the most significant section for purposes of this case is, again, section 13 (Ill. Rev. Stat. 1973, ch. 34, par. 5023). As amended, the budgetary procedure established by section 13 calls for the Hospital Commission to submit to the County Board "a consolidated budget covering all anticipated income, expenses, and capital outlays." (Ill. Rev. Stat. 1973, ch. 34, par. 5023.) The Hospital Commission simultaneously requests an appropriation from the County Board, of an amount equal to "the difference between the anticipated expenses and capital outlays in the consolidated budget

and the anticipated income submitted in the consolidated budget." To "offset such net amount," the County Board then appropriates "a sufficient sum of money as the Board deems necessary for the Commission to meet the expenses and to carry out the provisions of this Act." Ill. Rev. Stat. 1973, ch. 34, par. 5023.

Both sides agree that, under this new procedure, the County Board no longer may directly veto or modify the line-item or program expenditures of the Hospital Commission, it being the clear intent of the legislature to vest primary responsibility for day-to-day management and individual budgetary questions in the Hospital Commission. It was expressly conceded, however, by counsel for the Hospital Commission, during oral argument, that the County Board retains the power to decide whether to appropriate the full amount requested by the Hospital Commission, and it was further conceded that the County Board may base its decision upon its belief that expenditures projected by the Hospital Commission are too high. Nonetheless, the Hospital Commission contends that even if the County Board refuses to appropriate the full amount requested, the Hospital Commission remains free to expend the full amount projected in the consolidated budget which it submitted to the County Board, provided it can find the money elsewhere, *e.g.,* from the receipt of revenues in excess of those projected in the consolidated budget. While we agree that the statutory scheme created by the Act is, indeed, a "hybrid," we think that the construction of the Act urged upon us by the Hospital Commission would create a Frankenstein.

It just does not make sense to assume that the legislature intended the Hospital Commission to be able to subvert the fiscal authority retained by the County Board under the Act, by simply overstating projected expenditures or by understating projected revenues. We have examined all the various statutory provisions from which

the Hospital Commission has attempted to glean such an intent, but when read *in pari materia* with section 13 (*cf., e.g., Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 35 Ill. 2d 205), we find them totally lacking in support for the Hospital Commission's position. (See, *e.g.,* Ill. Rev. Stat. 1975, ch. 34, par. 5020 (power "to administer and expend all funds collected").) Counsel for the Hospital Commission has characterized as "political rhetoric" and "nonsense" the notion that the Hospital Commission is "overspending" because, counsel contends, the Commission has never overspent the amount stated in its consolidated budget. We would not be so cavalier, however, about legislative intent regarding control of the public purse. There are, inevitably, tensions inherent in the statutory division of authority among different units of government. When those tensions give rise to disputes which end up in court, it is the duty of the courts to attempt to give full effect to the overall legislative scheme, and to interpret the law consistent not only with the apparent meaning of the language of the particular provisions at issue, but also with the overall objects of the legislative scheme. (See *People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271, 273.) Here, it is apparent that the legislature intended to keep the County Board out of the day-to-day affairs of the Hospital Commission, but it is also apparent that the legislature did not intend to vest the Hospital Commission with sole authority as to its overall expenditures. While there is a danger that the County Board will attempt to use its limited fiscal powers in such a way as to influence the exercise of the powers reserved to the Hospital Commission, that is the type of tension inherent in any division of authority.

The provision of social services in a democracy is dependent upon public faith in the cost-effectiveness of those services. Fiscal controls are, therefore, in the final analysis, the allies, not the adversaries, of the public weal.

We find that the opinion and order below correctly and lucidly declared the legal relationship of the parties regarding this issue, and we accordingly affirm that part of its judgment.

The circuit court also correctly dismissed the Hospital Commission's counterclaim for declaratory judgment regarding the taxing power of the county. The Hospital Commission sought a declaratory judgment that the County Board's authority to appropriate funds for the Hospital Commission was not limited to sums raised by the tax authorized by section 13 of the Act (Ill. Rev. Stat. 1977, ch. 34, par. 5023 ("tax on the taxable property in the county to be extended at a rate not to exceed .25% of value")). The County Board, however, does not seek to exercise the authority which the Hospital Commission seeks to establish, and we agree with the court below that declaratory judgment therefore would be inappropriate here. It is undisputed that the Hospital Commission may not compel the exercise of the authority which it seeks to establish for the County Board. Accordingly, a decision on this issue would merely be advisory, "and Illinois judges have no authority to issue advisory opinions." *Howlett v. Scott* (1977), 69 Ill. 2d 135, 143; *28 East Jackson Enterprises, Inc. v. Rosewell* (1976), 65 Ill. 2d 420, 426; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375; *Exchange National Bank of Chicago v. County of Cook* (1955), 6 Ill. 2d 419, 421-22.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Judgment affirmed.*