*In re* APPLICATION OF EDWARD J. ROSEWELL, County Treasurer and *Ex Officio* County Collector of Cook County.—(VIRGINIA CORPORATION, Petitioner-Appellant, *v.* EDWARD J. ROSEWELL, Respondent-Appellee.)

First District (2nd Division)    No. 79-1861

Opinion filed March 3, 1981.

Phelan, Pope & John, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This action arises out of a scavenger sale held pursuant to the Revenue Act. (Ill. Rev. Stat. 1977, ch. 120, par. 716a.) Petitioner, Virginia Corporation, bid upon two tax delinquent land parcels and subsequently brought this action to confirm its bids and to enjoin the County Collector of Cook County (Collector) from reoffering the property for sale. The Collector filed a motion to dismiss the instant petition and the trial court granted that motion. The sole issue presented for review is whether the Collector has authority to reoffer for sale delinquent parcels prior to confirmation of the court where petitioner was the highest bidder at a properly conducted scavenger sale.

The pleadings indicate that petitioner, through an attorney acting in its behalf, attended a scavenger sale conducted by the Collector on July 3, 1979, pursuant to the judgment and order of sale entered by the circuit court on May 4, 1979. The instant parcels, identified by permanent index numbers 17-15-104-020 and 17-15-104-021, were offered to the highest bidder. The parcels, collectively known as 28 East Jackson Boulevard, Chicago, are improved with a 70-year-old office building.[1] Petitioner's bids of $100,000 and $160,000 for each parcel, respectively, were the highest bids offered. No irregularities accompanied the bidding. Petitioner then tendered to the Collector a cashier's check in the total amount of its successful bids.

Approximately one month later, pursuant to the direction of the County Board of Cook County, the Collector returned the tendered check. The County Board also directed that the parcels be reoffered and that the county bid upon them in the full amount of tax delinquencies and penalties.[2] The Collector returned petitioner's check, without prejudice,

---

[1] The instant property has been the subject of extensive litigation under the Revenue Act: 28 E. Jackson Enterprises, Inc. v. Cullerton (7th Cir. 1977), 551 F.2d 1093; 28 E. Jackson Enterprises, Inc. v. Cullerton (7th Cir. 1975), 523 F.2d 439, cert. denied (1976), 423 U.S. 1073, 47 L. Ed. 2d 83, 96 S. Ct. 856; 28 E. Jackson Enterprises, Inc. v. Rosewell (1976), 65 Ill. 2d 420, 358 N.E.2d 1139; 28 E. Jackson Enterprises, Inc. v. Rosewell (1978), 63 Ill. App. 3d 880, 380 N.E.2d 895.

[2] The total tax delinquency of the subject parcels is $544,431.

on August 3, 1979. The Collector then published a public notice disclosing the parcels would be offered at public scavenger sale on October 3, 1979.

On September 27, 1979, petitioner filed the instant action and the Collector thereafter filed a motion to dismiss. On October 2, the trial court found, as a matter of law, that the Collector had authority to reopen the bidding process and reoffer parcels included in the order of sale because the Revenue Act vests in the Collector broad discretion in the conduct of scavenger sales. The petition was dismissed. The reoffering has been stayed pending this appeal.

## I.

■■ Petitioner contends on appeal that the Revenue Act requires the Collector to report petitioner's successful bid to the circuit court for confirmation. Petitioner argues that once the Collector has received the highest bid at a public scavenger sale, has struck off a parcel as sold,[3] and has received tender of payment therefor, the Collector must report the sale for confirmation. Petitioner concludes that absent fraud, irregularity, or unfairness the Collector cannot reoffer such parcels at public sale. We agree.

## A.

The pertinent provision of the Revenue Act governing this cause is as follows:

> "All such lands and lots shall be offered for sale in consecutive order as they appear in the delinquent list and the County Collector *shall* file his report of sale in the Court within 30 days of the date of sale of each tract of land or lot." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 716a.)

We construe the above emphasized language as mandatory because to do otherwise would defeat the purpose of the Act.

The plain language of the Act evidences a clear legislative intent to require the Collector to report to the court the result of scavenger sales held pursuant to court order. (See, *e.g., People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272, 276-77, 410 N.E.2d 404; see generally 2A A. Sutherland, Statutes and Statutory Construction §57.01 *et seq.* (4th ed. 1973).) The purpose of tax foreclosure sales is to "clear up hopeless tax delinquency and to put the property again on a tax-paying basis." *(People v. Anderson* (1942), 380 Ill. 158, 162, 43 N.E.2d 997.) The Scavenger Act is

[3] The Collector conceded at oral argument before this court that although the parcels were struck off the delinquency list as sold to petitioner, a subsequently filed list in the October 15, 1979, report of sale contained the entry "none" for the name of the successful bidder on each of the instant parcels. This was not correct. We deem it sufficient to note here that the integrity of the report of sale is essential to the proper administration of the Revenue Act.

but one of several mechanisms available to the County Collector to recover unpaid taxes and return property to the active tax rolls. Because the Scavenger Act provides for sale of property tax delinquent for 10 or more years (Ill. Rev. Stat. 1977, ch. 120, par. 716a) (effective until July 1, 1980), and has as its main purpose the return of the property to a revenue producing status, property is sold at a scavenger sale to the highest bidder, even though that bid may not equal the full amount of tax delinquency. The placement of the property into the hands of the highest bidder is the means by which the statutory purpose is achieved. Accordingly, a bid inadequate to satisfy a tax delinquency would not justify a refusal to confirm the sale. For any interested party to successfully challenge the adequacy of price bid, the "inadequate" bid would have to be linked with fraud or unfairness.

■■ The procedure set forth under the instant statute contains no explicit grant of discretionary authority to be vested in the Collector's office. Research reveals no case law to support the Collector's assumption of such authority. Judicial discretion, however, may be exercised, according to rules of law, during confirmation proceedings. (See, *e.g., Evans v. Hunold* (1946), 393 Ill. 195, 200, 65 N.E.2d 373.) Those proceedings are held to review the propriety of court ordered sales. (See generally *Shultz v. Milburn* (1937), 366 Ill. 400, 403, 9 N.E.2d 199.) During review of a sale the scope of judicial discretion is broad *(People v. Anderson,* at 163), but it is not unlimited *(Shultz v. Milburn).* Judicial discretion is properly exercised and confirmation of a sale will be denied where fraud, irregularity, or unfairness in the sale is established. *(Garrett v. Moss* (1858), 20 Ill. 549, 554; *Evans v. Hunold,* at 199.) Absent evidence establishing these grounds for denial of confirmation, the circuit court generally should approve the sale. This limitation on the exercise of judicial discretion exists in service to the "principle that stability should be given [to] judicial sales." *(People v. Anderson.)* Thus, judicial scrutiny operates to protect the integrity of court ordered sales and accomplish the Act's purpose.

### B.

■■ The Collector is a party to the confirmation proceedings since it is that office which reports the sale to the court. Taxpayers have the right to intervene in confirmation proceedings. *(People v. Wrage* (1960), 20 Ill. 2d 55, 58, 169 N.E.2d 225.) So too does the owner. *(People v. Wrage.)* The instant Act provides an adequate avenue affording County Board participation in public scavenger sales. The County Board could have bid upon the subject parcels at the public sale. Absent statutory authority otherwise, that failure to do so cannot affect petitioner here. The instant

petitioner's bids were the highest offered during the scavenger sale. The Collector struck off the parcels as sold. Payment was tendered. The Collector is therefore required by statute to file his report of that sale with the circuit court for confirmation. Accuracy is obviously a fundamental requirement. Here, no reoffer is authorized unless confirmation is denied. Finally, confirmation, and the attendant exercise of discretionary authority, is reserved to the circuit court.

In accordance with the aforesaid reasoning, the trial court's dismissal of Virginia Corporation's petition is reversed and this cause is remanded to that court for a confirmation hearing.

Reversed and remanded.

HARTMAN, P. J., and PERLIN, J., concur.

